UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGINIA INGARRA,

    Plaintiff,

v.                                          Case No. 13-cv-10882

ROSS EDUCATION, LLC,

                                              HON. MARIANNE O. BATTANI

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)**

Before the Court is Defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 10). Plaintiff Virginia Ingarra filed a complaint on March 6, 2013, against her former employer, Defendant Ross Education, LLC, ("Ross") alleging gender discrimination in violation of Title VII and Michigan's state law counterpart, the Elliot-Larsen Civil Rights Act. At oral argument on the Defendant's Motion to Dismiss, the Court granted Ingarra leave to amend her complaint. The Court heard oral argument on Defendant's second motion to dismiss on November 4, 2013, and at the conclusion of the hearing took this matter under advisement. Upon review of the pleadings, briefs, and arguments, the Court **DENIES** Defendant's Motion to Dismiss.

I.      STATEMENT OF FACTS

Ingarra began working for Ross in March 2010 as a dental instructor, and was promoted to Lead Dental Instructor in July 2011.  (Doc. No. 9 at 2).  In March 2012 she notified her supervisor that she would be undergoing in-vitro fertilization ("IVF") to try to become pregnant.  (Doc. No. 9 at 2).  While receiving IVF, Ingarra's supervisor told her that she had to work as a "teaching assistant" instead of as lead instructor to accommodate the procedure and allow her to sit.  (Doc. No. 9 at 2-3).  Ingarra alleges she never requested accommodations or asked to sit down while working.  (Doc. No. 9 at 3).  Her supervisor told her to work sitting down "because you are being pumped with so many hormones." (Doc. No. 9 at 3).  Ingarra completed the procedure in late April 2012 and used accrued vacation time to take one week off after the procedure.  (Doc. No. 9 at 3).  Documents she sent to her employer while on leave indicated that her position was still listed with Ross as "Lead Dental Instructor." (Doc. No. 9 at 3).

Ingarra returned to work on May 2, 2012, but suffered a miscarriage that day.  (Doc. No. 9 at 3).  Ingarra was demoted the next day, her job title officially changed the next week, and her job status changed from full-time to part-time.  (Doc. No. 9 at 3).  In July 2012, Ingarra alleges that she had a conversation with her supervisor during a scheduling meeting.  While reviewing Ingarra's survey results at this meeting, the supervisor said that "you are not a good cheerleader in the classroom and more focused on babies." (Doc. No. 9 at 4).  Her supervisor asked if she intended to have additional medical procedures "regarding her desire to bear children." (Doc. No. 9 at 4).  Ingarra objected to this question, but her supervisor pressed her to answer.  (Doc. No. 9

at 4). Ingarra alleges that her supervisor was specifically concerned with whether Plaintiff planned to become pregnant again. (Doc. No. 9 at 4).

Her supervisor also told her that she was emotionally unstable to teach because of the increase in hormones from IVF and her pregnancy. (Doc. No. 9 at 4). Ingarra objected that the IVF did not alter her mood, but her supervisor claimed that other employees asked about Ingarra and said she was moody and acting weird. (Doc. No. 9 at 4). Ingarra only worked occasionally from May through August 2012, and the last day she worked for Ross was August 20, 2012. (Doc. No. 9 at 4). Ingarra alleges that Ross's stated reasons for her demotion and termination were untrue and a pretext to cover up the real reasons, which were because of her gender and pregnancy. (Doc. No. 9 at 6).

Ross disputes many of Ingarra's factual allegations. According to Defendant, Ross Medical Education Center provides post-secondary certificate programs at multiple campuses in Michigan and other states. (Doc. No. 10 at 2). Ross agrees that it hired Ingarra in March 2010 as a dental instructor at its Madison Heights campus (Doc. No. 10 at 2). It contends that because Ingarra did not obtain the proper certification, it moved Ingarra to a "Teaching Assistant/Substitute" position on May 8, 2012. (Doc. No. 10 at 3). According to Ross, Ingarra did not object to this change in position at the time and signed a contract to become a Teaching Assistant. (Doc. No. 10 at 3). Ross states that another woman replaced Ingarra as Lead Instructor. (Doc. No. 10 at 3).

Ross also states that it never terminated Ingarra's employment; rather, she

3

simply refused to accept scheduling assignments beginning in August 2012. (Doc. No. 10 at 4). Ross maintains that Ingarra's efforts to become pregnant had no impact on the decision to remove her from the Lead Instructor position. (Doc. No. 10 at 4).

## II. STANDARD OF REVIEW

To properly state a claim, Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must allege facts which, if proven, would entitle the plaintiff to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).

When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A complaint's factual allegations must

4

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678.

Plaintiff is not required to plead all elements of a prima facie case of discrimination in order to survive a motion to dismiss, but still must convince the Court that her claim is plausible. See Keys v. Humana, Inc., 684 F.3d 605, 609-10 (6th Cir. 2012) (applying Swierkiewicz to Twombly and Iqbal, concluding that the district court improperly required the plaintiff to plead all elements of a prima facie discrimination case to state a claim). Plaintiff's allegations must allow the Court to draw the reasonable inference that Defendant unlawfully discriminated against Plaintiff. Id. Prima facie elements that are impossible for Plaintiff to meet without further discovery need not be supported with specific factual allegations. Id.

### III. APPLICABLE LAW

Plaintiff brings gender discrimination claims under Title VII of the Civil Rights Act of 1964 and under Michigan's analogous state law, the Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201, *et seq*. Both are analyzed under the same framework and require the same factual allegations. See Ondricko v. MGM Grand Detroit, LLC, 689 F.3d 642, 652 (6th Cir. 2012); see also White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008). The Title VII and ELCRA claims will be analyzed together, using the elements of a prima facie discrimination case for the framework. In addition, she brings a claim under the Pregnancy Discrimination Act.

The first step in a Title VII gender discrimination claim is to establish a prima facie case. Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248 (1981);

5

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Plaintiff must show that (1) she is a member of a protected group; (2) she was qualified for the position; (3) she was subjected to adverse employment action; and (4) was replaced by someone outside of the protected class, or similarly situated, non-protected employees were treated more favorably.  Grace v. USCAR, 521 F.3d 655, 677 (6th Cir. 2008) (citing Peltier v. United States, 388 F.3d 984, 987 (6th Cir. 2004)).

The analysis complicates when considering pregnancy discrimination claims under the Pregnancy Discrimination Act ("PDA") of 1978.  This law amended Title VII of the Civil Rights Act of 1964 to protect against pregnancy discrimination by further defining Title VII's provision "on the basis of sex" as "because of or on the basis of pregnancy, childbirth, or related medical conditions."  42 U.S.C. 2000e(k).  The PDA overturned a Supreme Court case that held that pregnancy discrimination did not constitute gender discrimination.

The Sixth Circuit applies slightly different prima facie elements to a pregnancy discrimination claim, even though such a claim is analyzed "in the same manner" as other Title VII gender discrimination claims. Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000) (quoting Boyd v. Harding Acad. Of Memphis, Inc., 88 F.3d 410, 413 (6th Cir. 1996)).  The plaintiff making a pregnancy discrimination claim must show that (1) she was pregnant; (2) she was qualified for her job; (3) she was subjected to an adverse employment decision; and (4) there is a nexus between her pregnancy and the adverse employment decision.  Cline, 206 F.3d at 658 (citing Boyd, 88 F.3d at 413).  In a termination case, a plaintiff meets the second prong by showing that she

6

was performing "at a level which met [her] employer's legitimate expectations." Id. (citing McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir. 1990)).

The majority of lower courts agree with this circuit that pregnancy is a necessary prerequisite to a PDA claim. But as to the specific issue of whether the PDA applies to women who are receiving IVF, only the Seventh Circuit has ruled that it does. Compare Miles v. Dell, Inc., 429 F.3d 480, 490 (4th Cir. 2005) (collecting cases from other circuits that all require showing that the plaintiff was pregnant to make a prima facie pregnancy discrimination case) with Hall v. Nalco Co., 534 F.3d 644, 645 (7th Cir. 2008) (holding that an employee who was fired for taking time off to pursue IVF had a "cognizable sex-discrimination claim under the language of the PDA" because "adverse employment actions taken on account of childbearing capacity affect only women."). See also Lulaj v. Wackenhut Corp., 512 F.3d 760, 765 (6th Cir. 2008) (noting that plaintiff is a member of the protected class—pregnant women).

This Court is not willing to go as far as to conclude that a non-pregnant plaintiff can bring a PDA claim if IVF is being used. The Sixth Circuit has never specifically taken up the issue of whether a plaintiff who is using IVF falls under the protections of the PDA. But the Court agrees that adverse employment actions taken on account of childbearing capacity do affect only women and are therefore valid claims under Title VII.

**IV.   ANALYSIS**

Ingarra's complaint outlines two different adverse employment actions. Her claim that she was demoted the day after she miscarried qualifies as a pregnancy

7

discrimination claim under the PDA. Her other claim, that she was phased out of employment because she was using IVF to try to become pregnant again, falls within Title VII's scope, rather than the PDA, because she was not actually pregnant.

### A. PDA Claim

Plaintiff alleges that she suffered discrimination because of her pregnancy or pregnancy-related condition; specifically, she claims that she was demoted because she miscarried. Plaintiff meets the first prima facie element by claiming that she was pregnant and suffered a miscarriage in early May 2012. (See Doc. No. 9 ¶ 17).

Ingarra also alleges that she was qualified for the lead dental instructor position. She claims that her continued employment was not conditioned on becoming certified in Michigan, that she received her certification in July 2012, and that she "was an excellent employee who received good performance reviews and merit increases." (Doc. No. 9 ¶ 6-9). Ross disputes that Ingarra fulfilled the conditions of her employment, asserting that she was demoted in May 2012 because she had not yet received a required certification (Doc. No. 10 at 3). Despite this, Plaintiff's allegations are sufficient to at least make an initial showing that she was qualified for her position.

Ingarra claims, and Ross confirms, that Ross demoted Ingarra from lead dental instructor to teaching assistant or substitute in May 2012 (Doc No. 9 ¶ 19-20, Doc. No. 10 at 3). Specifically, Ingarra alleges that she had a miscarriage on May 2, 2012, and that she was demoted on May 3, 2012 (Doc. No. 9 ¶ 17-18). Ingarra's allegation that she had a miscarriage on May 2 implies that she was pregnant; thus, she suffered a pregnancy-related condition. Because miscarriage is a pregnancy related condition,

8

and she is alleging that she was demoted the day after her miscarriage, this temporal nexus creates a sufficient inference that her demotion was caused by her miscarriage. Consequently, Plaintiff states a plausible pregnancy discrimination claim under the PDA.

### B. Title VII Gender Discrimination Claim

Ingarra properly characterizes her other claim as a "childbearing capacity" discrimination claim because she alleges that she was targeted for her intent to become pregnant. Specifically, Ingarra alleges that she was demoted and phased out of a job she was qualified for because of gender discrimination based on her desire and ability to become pregnant, or her childbearing capacity.

The United States Supreme Court has held that gender discrimination claims based on childbearing capacity fall under Title VII's protection. Int'l Union v. Johnson Controls, 499 U.S. 187 (1991). In Johnson Controls, the defendant had a company "fetal protection policy" excluding women from certain jobs because they were "capable of bearing children." Johnson Controls, 499 U.S. at 191-192. The Court held that the policy classified on the basis of gender and childbearing capacity rather than fertility alone, noting that the company "explicitly classifies on the basis of potential for pregnancy." Id. at 198-99. The Court found that a classification based on pregnancy potential "must be regarded, for Title VII purposes, in the same light as explicit sex discrimination." Id. at 199. In addition, the Court stated that the company "treat[ed] all its female employees as potentially pregnant; that choice evinces discrimination on the basis of sex." Id.

In amending Title VII, Congress indicated that the overarching concern behind Title VII and its later amendments was to prevent women from being marginalized in the workplace. A committee report from the House of Representatives noted that "the assumption that women will become pregnant and leave the labor force leads to the view of women as marginal workers, and is at the root of the discriminatory practices which keep women in low-paying and deadend jobs." H.R. Rep. 95-948, 3, 1978 U.S.C.C.A.N. 4749, 4751.

Plaintiff's particular method of trying to become pregnant was through IVF. There are several cases involving IVF across various districts and circuits, but not all of them involve gender discrimination claims based on childbearing capacity. These cases can be put into two categories. The first category of cases involving either IVF or similar fertility treatments involves claims that denying insurance coverage for fertility treatments violates Title VII. Two cases from other circuits held that denying insurance coverage for infertility treatments does not violate Title VII because infertility is gender-neutral. See Saks v. Franklin Covey Co., 316 F.3d 337, 343 (2d Cir. 2003) (holding that infertility is a gender-neutral condition and thus infertility discrimination from denial of insurance coverage for infertility treatments does fall within Title VII's protection), and Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 679-680 (8th Cir. 1996) (holding the same).

The second category of cases involves plaintiffs who were fired for taking time off to undergo IVF. Courts are also split as to whether this is permissible under Title VII. Compare LaPorta v. Wal-Mart Stores, Inc., 163 F. Supp. 2d 758 (W.D. Mich. 2001)

10

(granting summary judgment for defendant on Title VII claim where plaintiff was fired for taking time off for IVF and concluding that infertility is not a condition related to pregnancy or childbirth within the meaning of Title VII) with Hall v. Nalco Co., 534 F.3d 644 (7th Cir. 2008) (reversing the district court for granting summary judgment for defendant, holding that plaintiff who was fired for taking time off for IVF was discriminated against because of her childbearing capacity and presented a valid claim).

In Hall, the court concluded that the plaintiff suffered gender discrimination because only women undergo IVF. Here, although Ingarra makes similar arguments, this case need not reach the issue of whether firing a woman for undergoing IVF treatments constitutes gender discrimination because Ingarra does not claim that is why she was fired. Instead, Ingarra claims that she was specifically targeted because of her desire to become pregnant and bear children. Childbearing capacity only relates to women because men have no childbearing capacity; they are biologically incapable of bearing children. Because childbearing capacity discrimination is gender-based, this is exactly the type of discrimination that Title VII was designed to cover in order to combat the view of women as marginal workers.

The reasoning behind Title VII supports Ingarra's childbearing capacity claim. In this case, Ingarra is a member of the protected class by virtue of being a woman. She also makes several specific allegations that support her claim that she was qualified for the Lead Dental Instructor position. Ingarra states that she was hired as a dental instructor due to her 2003 Canadian certification as a Dental Assistant (Doc. No. 9 ¶ 5),

11

she passed the American Medical Technologists Certification Examination for Registered Dental Assistant (RDA) for the State of Illinois on July 27, 2012 (Doc. No. 9 ¶ 6), and she was not required to obtain a Michigan RDA certification to keep her employment with Ross. (Doc. No. 9 ¶ 8). Furthermore, Ingarra maintains that she was an excellent employee, received good performance reviews, and received merit increases. (Doc. No. 9 ¶ 9). Ingarra also alleges that other similarly-situated employees who were not seeking to become pregnant were treated more favorably. (Doc. No. 9 ¶ 9). Ross disputes that Ingarra was qualified for her position and points out that she was replaced with another woman. (Doc. No. 10 at 2-4).

Ingarra essentially alleges that she was targeted and marginalized for attempting to become pregnant and making these attempts known. She alleges that after she made it known that she was attempting to become pregnant through the use of IVF, and after her miscarriage, her employer became concerned about "future endeavors into child bearing." (Doc. No. 9 ¶ 44). Ingarra also alleges that other similarly-situated employees, who were not seeking to become pregnant and had similar records and positions, were not demoted or terminated (Doc. No. 9 ¶ 47). She alleges that her employer's reasons for demoting her and terminating her were pretextual (Doc. No. 9 ¶ 48).

Ingarra's allegations must be accepted as true for the purposes of a motion to dismiss. Consequently, even though Ross disputes that Ingarra was qualified for her position and attaches exhibits to its motion to support its viewpoint, factual disputes are not before the Court on a 12(b)(6) motion.

**V.     CONCLUSION**

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATE: <u>February 21, 2014</u>


CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or e-filed to Plaintiff and counsel of record on this date.

s/Bernadette M. Thebolt
Case Manager

13